

# SUPREME COURT OF MISSOURI
## en banc

ROBERT MARCH, )
)
      Appellant, )
)
v. )
)
TREASURER OF THE STATE OF )
MISSOURI – CUSTODIAN OF THE )
SECOND INJURY FUND, )
)
      Respondent. )

*Opinion issued July 26, 2022*

No. SC99381

## APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

Robert March (hereinafter, "Claimant") appeals from the decision of the Labor and Industrial Relations Commission (hereinafter, "the commission") denying his claim for permanent total disability (hereinafter, "PTD") benefits from the Second Injury Fund (hereinafter, "the Fund"). This Court holds the commission appropriately found it was not persuaded the combination of his preexisting disabilities and his primary injuries entitled him to PTD benefits because it was "equally likely" his preexisting disabilities alone rendered him permanently and totally disabled. Further, the commission did not give the Fund the benefit of the doubt in its determination Claimant's evidence stood in equipoise— even in the absence of any impeaching evidence—because Claimant bears the burden of proving it was more likely true than not true that he was permanently and totally disabled

due to the combination of his preexisting disabilities and his primary injuries. The commission's decision is affirmed.[1]

## Factual and Procedural Background

Claimant is a sixty-year old high school graduate who spent fifteen years working as a meat cutter using a vibrating knife and pushing 1,800-pound racks of meat. During this employment, Claimant had surgery to repair a tear to his left rotator cuff, an injury to his right finger, and carpal tunnel. Claimant missed work due to these injuries but returned to work without restrictions.

In 1996, Claimant began working for Milbank Manufacturing Company (hereinafter, "Employer"). Claimant fabricated metal electrical boxes via metal inert gas welding and stick welding followed by sanding with a twenty-pound grinder. Claimant fabricated between 300 and 400 boxes per day, with the boxes ranging in weight from 10 to 500 pounds.

Before Claimant suffered the primary injuries underlying his workers' compensation claim, he endured other health issues, including: morbid obesity, thyroid issues, hypothyroidism, hypertension, a transient ischemic attack, atrial fibrillation, asthma, a second left rotator cuff tear, and a left leg laceration. Claimant's left leg injury, inflicted during a hunting trip, eventually required treatment for stasis ulcers, affected his ability to stand, and created blood flow issues. The most significant of Claimant's preexisting medical conditions was his bilateral lower extremity condition for which he

---

[1] This Court has jurisdiction. Mo. Const. art. V, sec. 10.

was diagnosed in 2005 with edema and pain radiating down both legs into his ankles, secondary to morbid obesity, and venous varicosities associated with obesity.

In 2015, Employer changed its electrical box fabrication method, requiring Claimant to perform his job duties in a standing position rather than primarily in a seated position. Claimant explained working in a standing position required him to reach farther out, extend his arms above his shoulders, and to hold the boxes down. Claimant began experiencing numbness, tingling, and cramping in both hands, which he attributed to using a buffer and sander. Claimant also experienced bilateral shooting pains in his arms, shoulders, and neck.

In April 2015, Employer referred Claimant to Dr. Thomas Winston (hereinafter, "Dr. Winston") for treatment. Dr. Winston diagnosed Claimant with carpal tunnel syndrome in his right hand. Dr. Winston noted Claimant's complaint he had leg pain and venous stasis disease, which Dr. Winston stated were aggravated by standing but also "probably due to his weight and situation other than work." Dr. Winston recommended Claimant be allowed to work from a seated position. Claimant was given an injection in his right shoulder and released to return to work in May 2015. The parties stipulated Claimant achieved maximum medical improvement (hereinafter, "MMI") on May 15, 2015. Claimant subsequently sought and received an accommodation from Employer to allow him to sit for two-hour intervals, followed by two hours of standing, during his shifts.

Claimant continued to experience bilateral leg pain, aching, swelling, edema, and fluid leakage that he explained was due to being unable to sit to perform his work. Claimant continued to receive treatment from his physicians for these conditions. Claimant's

3

primary physician noted Claimant could not perform his job duties without special scheduling due to his leg conditions and instructed Claimant to not stand or walk for more than four hours per day and to elevate his legs. Dr. Michael Waldschmidt (hereinafter, "Dr. Waldschmidt"), a vascular specialist, began treating Claimant. Dr. Waldschmidt performed a bilateral saphenous vein endovascular laser ablation for severe bilateral lower extremity venous insufficiency to relieve Claimant's chronic ulceration difficulties. Dr. Waldschmidt recommended Claimant be restricted to twenty minutes of sitting or standing consecutively, avoid standing or sitting for more than one hour at a time, and keep his ankles elevated above his heart. Dr. Waldschmidt stated Claimant's "problem is obesity weight control," which "will be the final answer to his lower extremity problems."

Claimant left his employment with Employer on April 15, 2016. Thereafter, Claimant attempted to work as a security guard, but left that employment after two shifts because it required too much walking.

Claimant filed a workers' compensation claim against Employer.[2] In his November 2015 claim, Claimant alleged his primary work-related injuries were "bilateral lower extremities – body as a whole." In his June 2016 first amended claim, Claimant sought PTD benefits from Employer. In his December 2016 second amended claim, Claimant alleged his primary work-related injuries were "bilateral lower extremities and

---

[2] The record reflects Claimant filed two claims against Employer and the Fund for compensation: Injury Number 15-022721 and Injury Number 15-088007. The claim for Injury Number 15-022721 is not included in the record, but Claimant's motion to dismiss that claim with prejudice against Employer and the Fund is included. This appeal addresses only Injury Number 15-088007.

4

bilateral upper extremities – body as a whole." In his third amended claim filed in December 2017, Claimant alleged his primary work-related injuries were "bilateral upper extremities" and, for the first time, asserted a claim against the Fund for PTD benefits due to a prior injury to his bilateral lower extremities. Claimant settled his claim with Employer for the primary bilateral upper extremity injuries and proceeded to a hearing against the Fund on his third amended claim for PTD benefits.

At the hearing before the administrative law judge (hereinafter, "ALJ"), Claimant provided live testimony, describing his employment history and responsibilities, his medical conditions dating back to 1988, his job responsibilities, and his injuries sustained while working for Employer. Claimant explained he was able to return to work after the treatment on his arms was completed, but his arms hurt more when he had to work from a standing position. Claimant further stated his leg conditions worsened due to standing. Claimant testified about the impact his injuries had on his quality of life. Claimant explained he must keep his legs elevated above his heart for 90 percent of the day. Claimant cannot sit for less than two hours without having leg problems, and he can stand for only approximately one hour without a problem. Claimant testified about the pain, numbness, and swelling he experiences in his arms and legs. The Fund offered Claimant's deposition into evidence.

Claimant also submitted medical records and two medical reports. Dr. Waldschmidt opined Claimant developed severe lower extremity tissue hypertension from a combination of issues, including saphenous vein valvular incompetence, lymphedema, and extreme pelvic congestion increasing the effect of the previously mentioned two issues.

5

Dr. Waldschmidt found that standing for long hours on the job accelerated Claimant's preexisting condition, necessitating operative treatments.

Dr. William Hopkins (hereinafter, "Dr. Hopkins"), an orthopedic surgeon, performed an independent medical examination of Claimant and reviewed his medical records in rendering his opinion. Dr. Hopkins stated Claimant sustained bilateral upper extremity injuries during the course of his employment, resulting in a 30 percent right and 20 percent left permanent partial disability at the 175-week level. Dr. Hopkins found that due to Claimant's previous carpal tunnel syndrome, 5 percent of his permanent partial disability is preexisting and the remaining 25 percent is due to his April 2015 work-related injury.

With respect to Claimant's bilateral lower extremities, Dr. Hopkins noted Claimant had "a longstanding history of edema" and "an extended history of bilateral venous stasis … compounded and added to by his weight …." Dr. Hopkins agreed with Dr. Waldschmidt that "standing for long hours during the course of employment aggravated and necessitated Claimant's need for ablation surgery, and aggravated his preexisting venous stasis in his lower extremities, and increased his problem with … [E]mployer not allowing him to work in a seated position, part of the day." Dr. Hopkins assigned a total of 45 percent right and 45 percent left lower extremity permanent partial disability at the 160-week level. Due to Claimant's preexisting disabilities prior to April 2015, Dr. Hopkins assessed 15 percent of the total to preexisting medical factors, the remaining 30 percent as the direct and prevailing factor of his cumulative work-related injuries, and applied a 15 percent load factor due to the bilateral nature of the disabilities.

6

Dr. Hopkins noted Claimant would require additional care and treatment for his lower bilateral extremities and was at a high risk of requiring bilateral below-knee amputations.

Dr. Hopkins found Claimant's bilateral lower extremity condition prevented him from engaging in gainful employment, opining, "It is my professional opinion that with his bilateral leg condition [Claimant] cannot engage in gainful employment. I do not believe any employer in the ordinary course of business could reasonably be expected to hire him given his condition" rendering him permanently and totally disabled. Dr. Hopkins noted Claimant's history of bilateral knee pain and morbid obesity, which he believed were additional factors contributing to his overall disability. Dr. Hopkins concluded Claimant's "[PTD] rises when one considers the residual physical disabilities and resultant restrictions attributable to his work injuries and his allied physical inabilities."

Claimant also offered vocational reports and deposition testimony from Terry Cordray (hereinafter, "Cordray") and Kristine Skahan (hereinafter, "Skahan") regarding his ability to compete in the open labor market. Cordray issued two reports. Cordray's initial report stated Claimant was "disabled due to his venous insufficiency and obesity." Cordray noted Claimant's long history of treatment for his bilateral lower extremities rendered him vocationally disabled. Cordray opined, "The primary reason [Claimant] would not be able to perform this job is because of his pre-existing conditions, and not his carpal tunnel injury sustained in April 2015." Cordray issued a second report seven months later, clarifying in his deposition, "[T]he current claim is the lower legs, the venous insufficiency, the swelling in his legs, the need to elevate his leg but he had a separate preexisting shoulder surgery and carpal tunnel surgeries and a claim and I just

7

ignored that. I didn't catch it in my first report." In his supplemental report, Cordray relied on Dr. Hopkins' report to find Claimant was vocationally disabled as "a result of the underlying combination of his injury of April 2015, to the upper extremities in concert with his injuries and limitations to the bilateral lower extremities." Skahan also determined Claimant was vocationally disabled "due to the upper extremity injuries of bilateral carpal tunnel and injuries from repetitive use to right and left shoulders on or about [April 2015] and the progressive disabilities from his venous stasis and aggravation from his work activities to the bilateral lower extremities around the same time frame of April of 2015."

The ALJ issued an award denying Claimant PTD benefits. The ALJ found Claimant's preexisting disabilities, "primarily the lower extremity condition, was actively being treated and was disabling at the time of [his] work-related accident, which involved [in]operable bilateral carpal tunnel injuries." The ALJ stated the vocational testimony supported a finding that a progression of Claimant's bilateral lower condition rendered him unable to compete in the open labor market. The ALJ determined the "greater weight of the testimony leads me to conclude … Claimant has not met his burden of proof to establish … Fund liability … [because] Claimant's lower extremity condition which preexisted the work injury was actively being treated and significantly deteriorated after the work-related accident." The ALJ further found "there was no aggravation or acceleration of the work-related accident to combine to lead … Claimant to be permanently and totally disabled."

Claimant sought review from the commission, which issued a supplemental opinion affirming the ALJ's decision. The commission supplemented the ALJ's findings of fact but did not comment on the credibility of the witnesses. The commission disavowed the

8

ALJ's findings that Claimant's bilateral lower extremity condition was being actively treated and significantly deteriorated after the work-related accident and disavowed it was the progression of his bilateral lower extremity condition that rendered him unable to compete in the open labor market. Nevertheless, the commission agreed the Fund was not liable for PTD benefits because Claimant failed to meet his burden of persuasion, stating:

> [Claimant] presented evidence in the record to establish his theory of the case. However, we are not persuaded that the *combination* of [Claimant's] preexisting injuries *and* the primary injury resulted in [Claimant's PTD]. It was equally likely that [Claimant's] preexisting injuries (without the addition of the primary injury) resulted in [Claimant's PTD].

(Emphasis in original). The commission rejected Claimant's argument the ALJ's award was not supported by factual evidence because the Fund failed to impeach his testimony or the medical reports submitted, finding it was unnecessary for the Fund to put forth factual evidence because Claimant bore the burden of proof.[3] Claimant appeals.

## Standard of Review

"This Court reviews the commission's decision to determine if it is 'supported by competent and substantial evidence upon the whole record.'" *Cosby v. Treasurer of Mo.*, 579 S.W.3d 202, 205 (Mo. banc 2019) (quoting Mo. Const art. V, sec. 18). This Court

> may modify, reverse, remand for rehearing, or set aside a workers' compensation award upon a finding that: (1) the commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the commission's factual findings do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award.

---

[3] One commissioner dissented, finding Claimant met his burden of persuasion establishing his preexisting bilateral lower extremity injuries combined with his primary bilateral upper extremity injuries rendered him permanently and totally disabled and entitled him to PTD benefits.

*Malam v. State, Dep't of Corr.*, 492 S.W.3d 926, 928 (Mo. banc 2016) (citing section 287.495.1(1)-(4), RSMo 2016).[4] "Although the commission's decision is afforded substantial deference, this Court must still 'examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence.'" *Id.* (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003)). "Only factual findings that are necessary to make an award for the employee must be supported by competent and substantial evidence on the whole record." *Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 200 n.8 (Mo. banc 2020).

**Analysis**

In his sole point on appeal, Claimant argues the commission erred in finding the Fund was not liable for PTD benefits because the commission is mandated to weigh the evidence impartially without giving the benefit of the doubt to any party. Claimant contends the commission impermissibly gave the Fund the benefit of the doubt by: (1) not finding his medical and vocational experts credible when they were unimpeached, and (2) denying PTD benefits when the Fund failed to present any impeaching evidence directed at his credible medical and vocational experts. Claimant believes the Fund must present its own expert testimony challenging the credibility of a claimant's experts to prevail, especially when it is uncontested that a claimant's primary injury is work-related. Hence, Claimant asserts, because the Fund presented no evidence to counter or impeach

---

[4] All statutory references are to RSMo 2016 unless otherwise indicated.

his experts—whom he alleges opined the combination of his preexisting disabilities and primary injuries rendered him permanently and totally disabled and the commission did not comment on the experts' credibility—the commission should have awarded him PTD benefits.

Section 287.220 was amended in 2013 to limit the number of workers eligible for Fund benefits. *Treasurer of Mo. v. Parker*, 622 S.W.3d 178, 181 (Mo. banc 2021). Because Claimant's claim was made after the amendment, he must demonstrate two conditions pursuant to section 287.220.3 to obtain compensation from the Fund. First, Claimant "must have *at least* one qualifying preexisting disability." *Id*.; section 287.220.3(2)(a). "[T]he preexisting disability must be medically documented, equal at least 50 weeks of permanent partial disability, and meet one" of four additional criteria. *Parker*, 622 S.W.3d at 181. Second, Claimant must demonstrate he "thereafter sustain[ed] a subsequent compensable work-related injury that, when combined with the preexisting disability ... results in a [PTD] ...." Section 287.220.3(2)(a)b.

The parties contest whether Claimant is entitled to compensation from the Fund pursuant to section 287.220.3.[5] Section 287.808 places "[t]he burden of proving an entitlement to compensation … on the employee …." Further, "[i]n asserting any claim or defense based on a factual proposition, the party asserting such claim or defense must

---

[5] The Fund also asserts Claimant cannot demonstrate he has a preexisting disability that satisfies section 287.220.3(2)(a) in that he cannot satisfy any of the four additional statutorily mandated criteria. The Fund further contends Claimant does not have a basis for a section 287.495.1(4) challenge on appeal. Claimant does not address or refute these arguments in his reply brief; however, this Court need not reach these issues given disposition of Claimant's sole point.

11

establish that such proposition is more likely to be true than not true." *Id*. Claimant correctly notes section 287.800.2 mandates the commission "shall weigh the evidence impartially without giving the benefit of the doubt to any party when weighing evidence and resolving factual conflicts." Accordingly, Claimant believes he presented unimpeached medical and vocational evidence, and, therefore, met his burden of proof regarding his entitlement to Fund compensation and the commission's decision to the contrary violated section 287.800.2.

Claimant's argument that his unimpeached evidence essentially constitutes a presumptively valid claim misunderstands the burdens a claimant must meet to compel the Fund to pay PTD benefits. Claimant's "burden of proof is made up of two separate burdens, the burden of persuasion and the burden of production." *Annayeva*, 597 S.W.3d at 200 n.8. "The burden of [production] is a party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder." *Id*. (quoting *Kinzenbaw v. Dir. of Revenue*, 62 S.W.3d 49, 53 n.6 (Mo. banc 2001) (internal quotations omitted)). Claimants meet their burden of production when they "introduce[] competent and substantial evidence on the whole record sufficient to support a finding on each of the facts necessary to that award." *Id*. The burden of persuasion requires claimants "actually 'to convince the fact-finder to view the facts in a way that favors" them. *Id*. (quoting *Krispy Kreme Doughnut Corp. v. Dir. of Revenue*, 488 S.W.3d 62, 67 (Mo. banc 2016)).

The commission recognized Claimant presented evidence to support his theory of the case, meaning Claimant met his burden of production in submitting evidence regarding his preexisting disabilities and his primary work-related injuries. Claimant then had the

12

burden of persuading the commission his compensable work-related injuries combined with his preexisting disabilities rendered him permanently and totally disabled to be entitled to PTD benefits from the Fund. Claimant contends Dr. Hopkins, Dr. Waldschmidt, and both vocational experts offered unimpeached testimony that his preexisting disabilities combined with his primary injuries rendering him permanently and totally disabled. Because the commission did not comment on the credibility of this evidence, Claimant argues the Fund carries a burden of non-persuasion, so to speak, or is compelled to introduce credible impeaching evidence to prevail. Yet section 287.808 contains no language mandating the Fund present evidence, impeachment or otherwise, unless the Fund wishes to assert an affirmative defense. *See Poach v. Treasurer of Mo. – Custodian of Second Injury Fund*, 365 S.W.3d 638, 642 (Mo. App. W.D. 2012) (holding the Fund was not obligated to present evidence to refute the claimant's testimony an accident occurred entitling him to benefits); *Hazeltine v. Second Injury Fund*, 591 S.W.3d 45, 63 (Mo. App. E.D. 2019) (recognizing the commission can issue a decision against a claimant for failing to meet the burden of proof even when the Fund presents no evidence at the hearing to contradict the claimant's evidence).

Claimant further argues, when the commission determined his evidence demonstrated it was "equally likely" either the combination of his preexisting injuries and the primary injury resulted in his PTD or his preexisting injuries alone resulted in his PTD and ruled in the Fund's favor, it erroneously gave the Fund the benefit of the doubt. Instead, Claimant urges this Court to find "equally likely" means he has met his burdens of production and persuasion to establish it was more likely to be true than not true that he

was entitled to PTD benefits. To so find would require this Court to tip the scale in Claimant's favor and give him the benefit of the doubt, which section 287.800.2 prohibits.

Claimant contends the commission cannot be said to have weighed the evidence impartially when the Fund foregoes presenting any impeaching expert testimony and prevails. Claimant's assertion his evidence established entitlement to PTD benefits "necessarily includes the converse proposition that no medical evidence supports the [c]ommission's findings." *Guinn v. Treasurer of Mo.*, 600 S.W.3d 874, 880 (Mo. App. S.D. 2020) (emphasis omitted). Claimant does not allow for the possibility that the commission was not weighing his evidence against the Fund's evidence, but rather, the evidentiary basis for its decision came from Claimant's own evidence and expert testimony, which presented equivocal findings.

With respect to Claimant's primary injuries, the parties stipulated Claimant achieved MMI for his primary injuries in May 2015 after Dr. Winston gave him an injection. The evidence demonstrated Claimant continued to work for almost a year after that point, despite his testimony he continued to have pain, numbness, and swelling in his bilateral upper extremities. Moreover, Cordray's initial report explicitly disavowed Claimant's primary injury prevented him from performing his job duties and relied solely upon Claimant's bilateral lower extremity conditions to opine Claimant was permanently and totally disabled. Skahan's report contained no reference to Claimant's primary injury when summarizing her observations and Claimant's current status. Skahan's report also relayed that Claimant told her he retired because he could not tolerate standing during his shift. Dr. Waldschmidt's report made no mention of Claimant's primary injuries or

14

whether they combined with his bilateral lower extremity condition to render him permanently and totally disabled. The commission could have found these facts, although not an exhaustive list, supported a finding Claimant's primary injury did not combine with his preexisting disabilities to entitle him to PTD benefits.

Claimant also presented evidence regarding his bilateral lower extremity conditions, which predated his primary injury by at least a decade with copious medical records. Claimant's evidence documented his inability to stand, sit, or walk for long periods of time. Claimant's primary physician noted Claimant could not perform his job duties without special scheduling due to his leg conditions and instructed Claimant to not stand or walk for more than four hours per day and to elevate his legs. Dr. Winston noted Claimant's complaint he had leg pain and venous stasis disease, which Dr. Winston stated were aggravated by standing, but also "probably due to his weight and situation other than work." Dr. Hopkins and Dr. Waldschmidt both offered detailed findings regarding Claimant's bilateral lower extremity condition, the restrictions this condition had on his ability to stand, walk, sit, and work, the requirement Claimant remain seated or lying down throughout the day with his legs elevated to alleviate this condition, and their recommendations for further treatments and the likely outcomes. Ultimately, Dr. Waldschmidt concluded Claimant's bilateral lower extremity condition rendered him permanently and totally disabled. The commission could have found these facts, although not an exhaustive list, supported a finding Claimant's preexisting disabilities alone rendered him permanently and totally disabled.

15

There was also evidence Dr. Hopkins, Skahan, and Cordray opined Claimant's preexisting bilateral lower extremity disabilities combined with his primary injuries to entitle him to PTD benefits. Claimant asserts the commission found Dr. Hopkins credible when it supplemented its opinion with some of Dr. Hopkins' findings and when it disavowed the ALJ's findings his bilateral lower extremity condition was actively being treated and significantly deteriorated after the work-related accident and disavowed it was the progression of his bilateral lower extremity condition that rendered Claimant unable to compete in the open labor market. Disavowing these specific findings did not amount to a credibility determination because "[t]he [c]ommission is free to believe some, all or none of any witness's testimony." *Williams v. Treasurer of Mo. – Custodian of Second Injury Fund*, 588 S.W.3d 919, 931 (Mo. App. W.D. 2019) (quoting *Dierks v. Kraft Foods*, 471 S.W.3d 726, 737 (Mo. App. W.D. 2015) (internal citation omitted)).

The parties attribute different meanings to Dr. Hopkins' ultimate finding, "It is my professional opinion that with his bilateral leg condition [Claimant] cannot engage in gainful employment." Claimant asserts "with" means his primary injury *combined with* his bilateral leg condition, while the Fund states "with" means Claimant was *afflicted with* the bilateral leg condition, rendering him permanently and totally disabled based on that condition alone. This dispute underscores the commission's finding Claimant's evidence stood in equipoise because reasonable minds may differ as to Dr. Hopkins' conclusion and the evidence on the whole record as set forth previously, even in the absence any Fund evidence to the contrary.

16

Based on the foregoing, this Court finds Claimant failed to carry his burden of persuasion in demonstrating he was entitled to PTD benefits. The commission did not act beyond its authority or violate chapter 287 in finding Claimant's evidence was equivocal about the issue of whether it was more likely true than not that his preexisting disabilities and primary injuries combined to render him permanently and totally disabled such that the Fund was liable for PTD benefits.

**Conclusion**

The commission's decision is affirmed.

_____
GEORGE W. DRAPER III, Judge

All concur.

17